**Shirley Mae THOMAS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 55472–55474.**

Court of Criminal Appeals of Texas, Panel No. 3.

Jan. 17, 1979.

Rehearing En Banc Denied April 11, 1979.

---

Steven G. Condos, Dallas, for appellant.

Henry M. Wade, Dist. Atty., William M. Lamb, Norman Kinne and Brady W. Sparks, Asst. Dist. Attys., Dallas, for the State.

Before DOUGLAS and TOM G. DAVIS, JJ.

## OPINION

WILLIAM J. CORNELIUS, Commissioner.

Appellant was convicted of one charge of murder and two charges of attempted murder. By agreement all three cases were tried together before the same jury. Punishment was set by the jury at fifty years' confinement in the murder case, and fifteen years' confinement in each of the attempted murder cases.

The State's version of the facts was as follows: On December 30, 1975, Michael Robertson, David Whitaker, Randy Marlowe and Alan Shope came to Dallas from Georgia to attend the annual Cotton Bowl game. On Wednesday, December 31, two of the young men met appellant at a bar in downtown Dallas. Appellant propositioned them about having sexual relations with her but the men said they had no money. Nevertheless, after some discussion they took her to their motel. A well-dressed black man was waiting outside and came to the men's motel door on one occasion to inquire if they were having a party. At one point the appellant told the men she was not going to stay around there and "mess with them" anymore, but that she was going to make some money. The men offered to take her back to town but she refused and left the motel. Shope and Robertson then went back to the downtown hotel near the bar and parked. Marlowe then joined them. Shortly afterward, appellant again appeared and indicated that she had changed her mind and wanted to go back to the motel with the men. They returned to the motel where they again saw the black man who had previously come to their door. Whitaker subsequently joined them. Appellant persuaded the men to disrobe and get on the bed. She then disrobed, and after going over to the radio and turning the music up very loud she went into the bathroom. When she came out, she reached into her purse, pulled out a .22 caliber pistol and started shooting. The first shot struck Alan Shope in the left side just above the belt. The second and fatal bullet hit Randy Marlowe in the lower chest. As Shope attempted to stand up he was shot again in the arm. The fourth shot hit Robertson in the right thigh and the last shot hit Robertson in the head as he attempted to disarm the appellant. After Robertson disarmed appellant, he saw her run outside to the parking lot and get into a waiting automobile. In addition to testimony from Robertson, Shope and Whitaker, the State produced several other witnesses, including a bartender who testified that one of the victims was in his lounge most of the afternoon on the day before the shooting.

Appellant took the stand and testified that she lived in Houston, and that she was abducted and kidnapped in Houston by

Shope, Robertson, Whitaker and Marlowe and forcibly taken to Dallas. She testified that on the way to Dallas, as well as after their arrival, the four men were taking narcotics and that they raped her and forced her to commit sodomy. She further said that the victims had threatened to kill her and that she started shooting only to escape from the motel room where she was being held captive, and that she did not intend to kill anyone. After the shooting she ran outside where she met a black man, who was a stranger to her, and when she told him what happened he took her first to his daughter's home in Dallas where he got her some clothes and then he drove her to Houston.

The sufficiency of the evidence is not challenged, but appellant presents sixteen grounds of error which she maintains require a reversal of the convictions.

The first nine grounds of error relate to various side-bar remarks of the prosecutor and comments made in his jury summation. The first complaint concerns the following comment during the prosecutor's argument at the punishment phase of the trial:

"You were called upon to assess a sentence, a sentence in the Texas Department of Corrections, and I think I am—I think I am being fair with you when I say that whatever your sentences may be, when they leave this trial court, she will have been sentenced; those sentences will have been sentenced by the judge to run concurrently . . .".

Appellant's objection was sustained and the jury was instructed not to consider the remark, but a motion for mistrial was denied.

■■■ Ordinarily, any injury from an improper jury argument by a prosecutor is obviated when an objection thereto is sustained and the jury is instructed to disregard the argument. Unless the remarks are so inflammatory that their prejudicial effect cannot reasonably be removed by such an admonition, a reversal of the conviction is not required. *Carraway v. State*, 507 S.W.2d 761 (Tex.Cr.App.1974); *Hodge v. State*, 488 S.W.2d 779 (Tex.Cr.App.1973). The rule has been applied to improper argu-

ment at the punishment stage of the trial which inferred that the accused would not actually be required to serve the length of time specified in the sentence. See *Bradley v. State*, 489 S.W.2d 896 (Tex.Cr.App.1973); *Gray v. State*, 477 S.W.2d 635 (Tex.Cr.App. 1972); and *Lenzi v. State*, 456 S.W.2d 99 (Tex.Cr.App.1970). The comment should not have been made, but we hold the error was rendered harmless by the sustaining of the objection and the court's instruction.

Also assigned as error is the following remark of the prosecutor during cross-examination of appellant:

"Q Now, you were clear on the other side of the room. You mean that he grabbed you over here behind this bed and pushed you all the way over to the door?

A He caught me around my arm and pushed me over by the door, and took the pistol . . .

Q Came over here and pushed you?

. . . . .

A And he took the pistol from out of my hand, and I got up and grabbed ahold of the door and ran on out the door.

Q I understand what your practiced testimony is; I am trying to ask you some questions, if you will just try to answer those."

Appellant's objection to the comment about "practiced testimony" was sustained and the jury was admonished to disregard it, but a motion for mistrial was denied.

■■■ Any error in making an improper remark or asking an improper question will usually be cured or rendered harmless by the sustaining of an objection thereto and instructing the jury to disregard it. *Sheppard v. State*, 545 S.W.2d 816 (Tex.Cr.App. 1977); *Mistrot v. State*, 471 S.W.2d 831 (Tex.Cr.App.1971); *White v. State*, 444 S.W.2d 921 (Tex.Cr.App.1969). The record here reflects that appellant's answers were sometimes not responsive to the prosecutor's questions and were merely repetitions of her previous answers. Under the circumstances, and considering the court's ac-

tion in sustaining the objection and instructing the jury reversible error is not shown.

■ During cross-examination of appellant the prosecutor inquired about the contents of her purse. She answered that a watch, among other things, was in the purse. When the prosecutor asked if the watch was still there, appellant answered "yes," after which the prosecutor remarked: "Okay, I just wanted to be sure we didn't steal your watch." An objection was sustained and the jury was instructed not to consider the comment, but the court refused to grant a mistrial.

The comment should not have been made, but the action of the court in sustaining the objection and in giving the instruction rendered the error harmless under the principles noted earlier. Compare *Jones v. State,* 504 S.W.2d 906 (Tex.Cr.App.1974).

■ Complaint is also made of an incident when the prosecutor allegedly presented unsworn testimony to the jury. The appellant had testified that the men she said had kidnapped her were taking narcotics. In addition, blood samples of the deceased reflected the presence of morphine. The State advanced the theory that appellant was lying, and that any drugs found in the deceased's blood must have been given him before he died, either at the scene of the shooting or at the hospital. The State's expert witness, however, testified that if the drug had been administered under such circumstances it would have been the result of a mistake or of malpractice. On re-direct examination of the expert, the State's counsel attempted to prove that mistakes are commonly made at hospitals. In doing so, he made the following comment: "I am just trying to point out through the Doctor, some mistakes that Parkland made that I am aware of . . .". Appellant's objection was sustained and the court instructed the jury to disregard the comment. Motion for mistrial was made and denied.

We do not consider the comment to be so prejudicial as to require reversal, particularly in view of the sustaining of the objec-

tion and the giving of the instruction. Moreover, the State's expert witness ultimately testified that in his opinion the morphine in the deceased's blood was from an illicit rather than a medical source. Under those circumstances, it is difficult to see how appellant could have been harmed by the comment.

■ Appellant next urges that the following argument of the prosecutor at the punishment stage of the trial constituted reversible error:

"Now, I do not condone, nor do I agree with anyone who engages in prostitution, nor do I condone, nor do I agree with the activities of these boys in the participation, if they were in prostitution; ___ if you go out and mess around with a prostitute, you ought to get killed. Do you believe that ought to be the law, that we ought to kill people who mess around and go out with prostitutes? *That* is pretty strong, *that* is what *they* are having you believe." (Emphasis supplied.)

Again, appellant's objection to the argument was sustained, and the trial court instructed the jury to disregard the comments, but refused to declare a mistrial.

Prior to the comment quoted, appellant's counsel had argued to the jury that the responsibility for the shooting was not solely that of the appellant, but that the victims should also bear some of the blame. The prosecutor's comment appears to be a legitimate answer to that argument. Under the circumstances, we do not believe that the comment constituted error. Certainly, the argument was not so prejudicial that the court's instruction could not render it harmless.

Appellant also complains of the court allowing the prosecutor to state that the conclusion he argued in the previous quote was the inference which the defense counsel had been making. Under the record as a whole, we do not believe appellant was prejudiced by the court's ruling in that regard.

Also assigned as error is the following argument:

"I don't think she planned to run out of that motel room in the nude, but here she has fired all her shots and they aren't all dead . . .".

Appellant's objection was sustained and the jury was admonished to disregard the remarks, but appellant's motion for mistrial was overruled.

■ We do not consider appellant to have been harmed by the comment. The State was merely responding to the defense argument that appellant would not have intentionally undressed and then started shooting. The State's position was that she disrobed knowing full well that she was going to shoot the four young men and assuming that she would not need the clothing to escape. The comment was a reasonable deduction from the evidence. Any possible error was cured by the court's instruction.

Grounds of error eight and nine argue that reversible error was committed when the prosecutor attempted to argue to the jury that merely because certain defensive theories were defined or mentioned in the charge did not mean that the court believed them. Before ruling on the defense counsel's objection, the court allowed the prosecutor to finish his statement. Then the court sustained the objection to the statement and instructed the jury, as he had previously done, that every matter raised by the evidence was required to be in the charge. Appellant contends that the court erred in allowing the prosecutor to complete the statement before ruling on the objection, and further that the comment was so prejudicial that the instruction could not remove its harm.

■ The prosecutor should not have referred to the belief or non-belief of the trial judge in explaining, as he had a right to do, how instructions get into the court's charge. *McClory v. State,* 510 S.W.2d 932 (Tex.Cr.App.1974). But in view of the full statement of explanation, and the court's instruction to the jury, we conclude that reversible error did not occur.

■ In grounds of error ten and eleven appellant complains because she was not allowed to fully cross-examine the State's expert witness, Dr. Zumwalt. Early in the trial evidence was produced showing that the deceased had traces of morphine in his blood. The State, in attempting to prove that the deceased was not using drugs, but that the drug was administered medically, proved by Dr. Zumwalt that it would not have been unusual for a general practitioner who came upon the deceased in his wounded condition to administer morphine to him. On cross-examination, appellant attempted to question Dr. Zumwalt as to whether he knew when he gave that testimony that the physician who actually ministered to the deceased prior to his death had stated that he did not administer morphine. The court would not allow appellant's counsel to question Dr. Zumwalt concerning the hearsay statements attributed to the other physician. Dr. Zumwalt, however, on cross-examination ultimately admitted what the defense was trying to prove. He stated:

"Yes, sir. In my opinion, the morphine found in the blood of the deceased was more probably from an illicit source rather than a medical source."

Under the circumstances we cannot perceive that appellant was harmed.

Ground of error twelve asserts that the trial court erred in refusing to give appellant's requested instruction No. Seven which read as follows:

"You are instructed that if the deceased, or those acting with him were in the process of sexually assaulting the defendant, or were in the process of confining the defendant after she was the victim of kidnapping as heretofore defined, then the defendant would not be required to wait until any further injury or sexual assault was actually inflicted or threatened to be inflicted, but she would have the right to use deadly force before receiving any further violence or sexual assaults and she would not have to wait and see if her abductors would release her."

The court did, however, include the following instructions:

"You are further instructed, in connection with the right of self-defense, that if the defendant was acting in self-defense when she opened fire at Randle Marlowe, Michael Robertson, Alan John Shope, or David Whitaker, acting individually or together, then she would have a right to continue firing so long as it reasonably appeared to her, at the time, as viewed from her standpoint alone, that all danger had not passed.

"You are further instructed on the law of self-defense that a person is justified in using deadly force against another to prevent the other's imminent commission of aggravated kidnapping, murder, rape, aggravated rape, robbery, or aggravated robbery.

"You are further instructed that on the law of self-defense, that if you find from the evidence that threats were made to the defendant by Randle Marlowe, Michael Robertson, Alan John Shope, or David Whitaker, acting individually or together, to do the defendant serious bodily injury or to take her life; or if you find from the evidence that the defendant was the victim of one of the above defined crimes then in commission, or was about to become the victim of one of the above defined crimes, then the defendant has a right to arm herself and exercise her right of self-defense as set out above."

 The charge sufficiently set out the defensive theory proposed in the requested instruction. When the charge given by the court adequately presents the defense proposed by a requested instruction, the accused is not harmed. *Sheppard v. State,* supra; *Aranda v. State,* 506 S.W.2d 221 (Tex.Cr.App.1974); *Estrada v. State,* 479 S.W.2d 316 (Tex.Cr.App.1972).

 Appellant further argues that the court's charge was erroneous because it indicated that appellant was justified in using deadly force only to prevent an imminent rape or kidnapping, but not in order to escape during or after the commission of such a crime. We do not agree. The charge clearly instructed the jury that appellant had the right to defend herself if she were the victim of such a crime or was about to become such a victim. The charge cannot reasonably be read as allowing the use of force to escape before, but not after the crime.

 The thirteenth ground of error asserts that the charge was improper because it referred to the possibility of appellant's retreating before self-defense would be justified, when in fact there was no way for appellant to retreat under the circumstances as they existed. We cannot agree. The charge on the duty to retreat was expressly based upon what a reasonable person, *in the defendant's circumstances,* would have done. That was adequate to protect the appellant's rights. See *Sheppard v. State,* supra.

Appellant also urges in ground of error fourteen that the court erred in failing to charge the jury on certain lesser offenses included in the offense charged, specifically those of involuntary manslaughter, negligent homicide and simple assault. In support of this argument appellant points to her testimony that she did not intend to kill anyone but simply began shooting at random in an attempt to escape her alleged captors.

 A charge on a lesser included offense is not required unless the evidence raises that issue. *McBrayer v. State,* 504 S.W.2d 445 (Tex.Cr.App.1974); *Torres v. State,* 493 S.W.2d 874 (Tex.Cr.App.1973). And, if the evidence raises only the issue that the accused is guilty of the offense charged or no offense at all, the issuer of a lesser included offense is not raised. *McBrayer v. State,* supra, and cases there cited. In this case appellant was the only witness for the defense. She testified that her only reason for shooting the pistol was her attempt to escape from a kidnapping and rape. If that testimony was true, she would have been guilty of no offense at all. As she was either guilty of the offense charged or no offense, a charge on lesser included offenses was not necessary.

Ground of error fifteen contends that reversible error was committed when the court refused to allow appellant to impeach the State's witness Hopkins by showing that he had been convicted of the offense of receiving and concealing stolen property and had been assessed a two-year probated sentence. The probation had expired.

It is well settled in Texas that a conviction resulting in a probated sentence which has expired may not be used to impeach the credibility of a witness. Tex.Code Crim. Proc.Ann. art. 38.29 so provides and the cases so hold. *Trippell v. State,* 535 S.W.2d 178 (Tex.Cr.App.1976); *Redman v. State,* 533 S.W.2d 29 (Tex.Cr.App.1976). Appellant recognizes those authorities but argues that the decision in *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), requires otherwise. We do not agree. *Davis v. Alaska* allowed an inquiry into a witness's prior juvenile probation even though Alaskan law prohibited such an inquiry. But the *Davis* decision was based upon the fact that the witness's prior juvenile experiences tended to prove bias on the part of the witness and that his testimony was colored by his past experiences. The juvenile record there was admissible for those special reasons, not merely as a criminal record which, by its very nature, impeached the witness's credibility. Appellant contends that the same situation was present here because, since the witness owned a bar, he was more subject to police or district attorney pressure to cooperate and testify as they wanted. But the answer to that argument is that appellant was allowed to fully show those facts as a possible basis for the witness's alleged bias. The conviction for receiving and concealing stolen goods was neither necessary nor relevant for such a purpose and therefore does not come within the exception created by *Davis v. Alaska.*

The final ground of error contends that the indictment should have been quashed because it was not based upon sufficient evidence. That such a contention is not grounds for attacking the validity of the indictment is well settled. *Costello v. United States,* 350 U.S. 350, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *Forbes v. State,* 513 S.W.2d 72 (Tex.Cr.App.1974); *Culley v. State,* 505 S.W.2d 567 (Tex.Cr.App.1974); *Carpenter v. State,* 477 S.W.2d 22 (Tex.Cr. App.1972).

All of appellant's grounds of error have been carefully considered and are overruled. The judgments of the trial court are affirmed.